**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ARCTICDX, INC., ARCTICAX, INC., and ARCTICAX US LTD., Plaintiffs, v. SEQUENOM, INC. and SEQUENOM CENTER FOR MOLECULAR MEDICINE, LLC, Defendants. | NO. 2:12-cv-81-JRG-RSP<br>Jury Trial Demanded |

**SEQUENOM DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS DECLARATORY JUDGMENT CLAIMS II THROUGH XI**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .....1

II. ARGUMENT .....2

A. Arctic Agrees That Sequenom's "Patent Rights Letter" Did Not Threaten Litigation .....2

B. None Of Sequenom's "Public Statements" Is Admissible Nor Pertinent .....5

C. Sequenom Has Repeatedly Stated That Arctic Has Not Infringed Sequenom's Patents .....7

D. Sequenom's Involvement In Two Unrelated California Suits Is Irrelevant .....10

III. CONCLUSION .....10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
172 F.3d 852 (Fed. Cir. 1999)....................8

*Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*,
2008 WL 345849 (D. Utah 2008)....................4

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................10

*Cat Tech LLC v. Tube Master, Inc.*,
528 F.3d 871 (Fed. Cir. 2008)....................1

*Dow Jones & Co, Inc. v. Ablaise Ltd.*,
606 F.3d 1338 (Fed. Cir. 2010)....................9

*Geospan v. Pictometry International Corp.*,
598 F. Supp. 2d 968 (D. Minn. 2008)....................5

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed Cir. 2009)....................4, 5

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................4, 7

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
518 F.3d 897 (Fed. Cir. 2008)....................5, 7

*Prasco, LLC v. Medicis Pharmaceutical Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)....................9

*SanDisk Corp. v. ST Microelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007)....................6

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.*,
57 F.3d 1054 (Fed. Cir. 1995)....................8

# I. INTRODUCTION

Arctic refuses to take "No" for an answer. Despite multiple unconditional reassurances from Sequenom that is does not intend to pursue a patent infringement claim against Arctic, and notwithstanding Arctic's own pre-suit analysis that Sequenom's conduct is benign, Arctic still insists that it can seek a declaratory judgment of non-infringement from Sequenom. The evidence is all to the contrary: Sequenom does not claim that Arctic has infringed any Sequenom's patent, and has never made any such a claim. Accordingly, no subject jurisdiction exists for Arctic's declaratory judgment claims, and those claims cannot survive this motion to dismiss.

As the Supreme Court, the Federal Circuit, and numerous decisions of this Court have emphasized, in determining Sequenom's motion to dismiss, the Court's "analysis must be calibrated to the particular facts of each case." *Cat Tech LLC v. Tube Master, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). The totality of the circumstances based on the particular facts here, as established by the admissible evidence, demonstrates that there is no actual controversy over whether Sequenom accuses Arctic of patent infringement. Sequenom has not made, and does not make, any such claim.

Arctic's primary focus is on the December 5, 2011 "patent rights letter" it received from Sequenom. Arctic insists that this letter threatened imminent patent infringement litigation and justified its declaratory judgment claims in its complaint. That argument flies in the face of what Arctic's own counsel said in his response to the letter: "There is no allegation that Arctic has infringed any claim of any patent listed. The letter merely provides a bald listing of pending or issued applications in a variety of countries, without asserting which claims of any of these patents or applications may be infringed." Declaration of John Cox ("Cox Decl.") at Ex. 5. The parties have nothing to fight about, and this Court's resources should not be further diverted from resolving actual disputes.

Arctic also claims that Sequenom's public comments compelled Arctic to seek declaratory relief. But the sum total of what Arctic is referring to is: (i) an offhand comment by a Sequenom scientist made fifteen months before this action was filed; (ii) a hearsay report by an unidentified online stock tipster that Arctic is "so small that it's not worth pursuing a patent infringement"; and (iii) Arctic Chairman's unsourced and non-specific recall about what others told him about Sequenom's view of the

uncompetitive nature of Arctic's product. None of this is admissible, and, even if it were, it falls far short of what is required to satisfy the constitutional requirements for a declaratory judgment action.

Moreover, Sequenom has unconditionally waived any claim of patent infringement by Arctic. The exhibits attached to Arctic's papers demonstrate that Sequenom has made and is making no infringement claim against Arctic. "As we have made clear, . . . Sequenom has not and does not contend that ArcticDX infringes any of the five DJ patents identified in your complaint." Cox Decl. at Ex. 7. "To reiterate our prior conversations: Sequenom is not aware of any facts that would show that ArcticDX is infringing [Sequenom's] US patents." *Id.* at Ex. 9. "Sequenom has never asserted that ArcticDX and/or its products infringe [Sequenom's] patents. . . . Sequenom again affirms that [Arctic's] Macula Risk does not infringe the DJ patents." *Id*. at Ex. 11. Federal Circuit law makes clear that such statements divest the Court of declaratory judgment jurisdiction.

Arctic's opposition brief also tries to find significance in Sequenom's unwillingness to execute Arctic's over-reachingly broad draft covenant not to sue. Sequenom has made plain its position that it has no patent infringement claim against Arctic, but it does not have to acquiesce to Arctic's most expansive wish list to prove its sincerity. Indeed, this lawsuit remains pending only because Arctic would not join an agreement memorializing Sequenom's admission that it has no infringement claim.

Finally, Arctic divines a litigious propensity in Sequenom from the fact that Sequenom is the *defendant* in two California declaratory judgment cases over patents for a product that is unrelated to the AMD testing market in which Arctic is trying to get a foothold. That other Sequenom competitors in another commercial context have commenced actions against Sequenom elsewhere provides no constitutional validity to Arctic's declaratory judgment claims before this Court.

Arctic's declaratory judgment claims have no factual nor legal predicate. The Court should grant Sequenom's motion to dismiss the declaratory judgment claims.

## II. ARGUMENT

### A. Arctic Agrees That Sequenom's "Patent Rights Letter" Did Not Threaten Litigation

The core of Arctic's case or controversy argument is that Sequenom's December 5, 2011 "patent rights letter" objectively created an imminent threat that Sequenom would sue Arctic for patent

infringement. *See* Opp. Br. at 10-14. Arctic spends several pages re-characterizing the actual text of the patent rights letter, asserting that it means a lot more sub rosa than it says in so many words. The patent rights letter speaks for itself, and it nowhere states that Arctic is infringing on any Sequenom patent, does not seek royalties from Arctic, and makes no threat of imminent infringement litigation. *See* Cox Decl. at Ex. 3.

But to gauge the actual and perceived thrust and effect of the patent rights letter, the Court need not accept Sequenom's view. The Court can instead take what Arctic itself said in its response to the letter through its outside counsel:

> In your letter, you assert that Sequenom is the exclusive licensee of several issued patents and pending applications worldwide with claims directed to methods of diagnosing age-related macular degeneration. Your client demands that any activities "covered" by such patents or applications cease. However, there is no allegation that ArcticDx has infringed any claim of any patent listed. Your letter merely provides a bald listing of pending or issued applications in a variety of countries, without asserting which claims of any of these patents may be infringed. . . . In any event, it is our understanding that ArcticDx has not infringed Sequenom's intellectual property rights as the markers used in the ArcticDx test for age-related macular degeneration (Macula Risk) are not encompassed within the claims of Sequenom's issued U.S. patents.

Cox Decl. Ex. 5.

The Court need look no further than this candid statement by Arctic of what it saw and understood in Sequenom's patent rights letter. Sequenom told Arctic that Sequenom owned certain patent rights in the market niche in which Arctic also operates, and, as Arctic's counsel stated, Arctic saw nothing more than that in the letter. Indeed, Arctic's counsel went further and also made plain what Arctic *did not see* in Sequenom's letter -- any "allegation that ArcticDx has infringed any claim of any patent listed." Not surprisingly, Arctic's reaction is identical to the passive responses of the sixteen other entities who received a virtually identical version of the same patent rights letter from Sequenom. *See* Declaration of Michael Malecek ("Malecek Decl.") at ¶ 2.

Sequenom has never contested Arctic's counsel's December 20, 2011 characterization of Sequenom's patent rights letter. Ironically, it is Arctic that now seeks to reject its own previously stated position. Arctic's brief proclaims that "Sequenom's letter was more than just a cleverly crafted information-gathering endeavor." Opp. Br. at 11. Yet that is *exactly the reverse* of how Arctic saw, and

said it saw, the letter before it decided to pursue this lawsuit. The Court should hold Arctic to its pre-litigation position. *See Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*, 2008 WL 345849 at *3 (D. Utah 2008) (no subject matter jurisdiction when declaratory judgment plaintiff received letters listing defendant's issued and pending patents but stating no position had yet been taken on whether infringement had occurred).

Arctic's original characterization of the patent rights letter as a bald listing of Sequenom's patents and pending applications with no claim of infringement was correct. That removes any basis for Arctic's argument that the "totality of the circumstances" here reveal the existence of a "definite and concrete" dispute over whether Arctic has infringed any of Sequenom's patents. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

Arctic's brief launches into Sequenom for failing to cite *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed Cir. 2009). *See* Opp. Br. at 12. But there is a good reason why Sequenom did not cite *Hewlett-Packard* – its facts bear no relationship to the facts here.

In *Hewlett-Packard*, the declaratory judgment claim defendant Acceleron was a patent holding company whose sole business rationale was to leverage royalties or damages from entities it claimed were practicing the patents it acquired. *Id*. at 1360. The Federal Circuit's opinion emphasized that the nature of Acceleron's business was the single most persuasive factor in finding that Acceleron's letter-based approach to Hewlett-Packard, including its refusal to agree to a mutual standstill arrangement, created a controversy sufficient for Hewlett-Packard to sustain a declaratory judgment claim. *See id.* at 1363 ("We also agree with the district court that the receipt of such correspondence from a non-competitor patent holding company may invoke a different reaction than a meet-and-discuss inquiry by a competitor."). The Federal Circuit further "observe[d] that Acceleron is solely a licensing entity, and without enforcement it receives no benefits from its patents. This adds significance to the fact that Acceleron refused Hewlett-Packard's request for a mutual standstill." *Id*. at 1364. Obviously, Sequenom is a very different kind of business than Acceleron. Arctic's argument that Sequenom's patent rights letter has the same legal resonance as Acceleron's correspondence with Hewlett-Packard is specious.

Indeed, were the facts different in *Hewlett-Packard* so that Acceleron was not a patent holding company but an active competitor like Sequenom, it is highly likely the outcome would have been different. As the Federal Circuit made clear in *Hewlett-Packard*:

> Thus, a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interest between the parties, let alone the existence of a 'definite and concrete' dispute. More is required to establish declaratory judgment jurisdiction.

*Id*. at 1362. To the extent that Arctic insists that *Hewlett-Packard* is a controlling precedent, its holdings are entirely consistent with *Geospan v. Pictometry International Corp.*, 598 F. Supp. 2d 968, 969-71 (D. Minn. 2008), which, as Sequenom's opening brief explained, is factually on all fours with the situation here. *See* Opening Br. at 9-10. These authorities mandate dismissal of Arctic's declaratory judgment claims.

*Hewlett-Packard* also reaffirms that the particular facts of the interactions between the specific parties are critical in determining whether there is a justiciable controversy. *Id.* at 1364. *See also Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) ("In short, all the circumstances must show a controversy."). The facts here are, as Arctic's counsel stated, that Sequenom listed its patent rights in a letter, Arctic saw it as such, Arctic responded that its product was unrelated to Sequenom's patents, and Sequenom concurred. These facts endorse the motion to dismiss.

**B. None Of Sequenom's "Public Statements" Is Admissible Nor Pertinent**

According to Arctic, its apprehension that Sequenom was about to sue Arctic for patent infringement derived from three "public statements" by Sequenom. *See* Opp. Br. at 2-3, 9-10. None of the "evidence" Arctic offers on these "public statements" is admissible. Nor, if admitted, would the statements support declaratory judgment jurisdiction.

Although Arctic presents these three statements as "examples" of a purported concerted stealth extra-judicial campaign by Sequenom against Arctic, these incidents are all that Arctic has. Moreover, none of these "public statements" was made at any time close to when Arctic filed this action, and Arctic is careful never to assert it knew of their existence before its lawyers crafted their papers in this case. *See* Declaration of Brent Zanke ("Zanke Decl.") at ¶¶ 7-8. Only one of the three statements

discussed in Arctic's opposition brief is referenced in Arctic's otherwise comprehensive complaint. *See* Complaint at ¶ 26.

First, Arctic dredges up a snippet from an unauthenticated account of a conference call discussing Sequenom's earnings for the third quarter of 2010. *See* Opp. Br. at 3, 9; Cox Decl. at Ex. 1. Arctic offers no foundation for the call transcript text, simply republishing a posting from the Seeking Alpha website. The content is multiple hearsay and, since Arctic offers it for the truth of the matters asserted, it is inadmissible.

Even if it were admissible, the transcript offers no support for Arctic's claim of subject matter jurisdiction. The earnings call referenced in the transcript occurred on November 4, 2010, *fifteen months before* Arctic filed its declaratory judgment claims. Since then, the Seeking Alpha website has posted transcripts of thirteen subsequent calls related to Sequenom's earnings, and not one of those transcripts includes any reference to Arctic. *See* <seekingalpha.com/symbol/sqnm>. If Sequenom were really minded to pursue an infringement claim against Arctic, the topic would surely have re-surfaced.

Further, the actual statement on which Arctic sets such store makes no reference to litigation against Arctic. In response to a question, a Sequenom scientist (not an attorney) mentions "a small company in Canada called Artic VX [sic]" as a potential competitor "that are probably in the same arena as ours and there's probably some IP issues there." Cox Decl. at Ex. 1. Besides getting Arctic's name wrong, the scientist's comment is qualified, does not refer to any patent, and is silent about any infringement claim. Such an off-hand aside does not satisfy Arctic's constitutional obligation. *See SanDisk Corp. v. ST Microelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) ("[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee.").

Second, Arctic relies on a June 15, 2011 posting on an online stock message board by an anonymous stock tipster identified only as "cmac_sandie." Opp. Br. at 3, 10; Cox Decl. at Ex. 2. The tipster's comments about what he says others said at the meeting lack foundation and are inadmissible hearsay. The Court should strike the exhibit.

In any event, the tipster's report is that Sequenom is *not* going to pursue a patent infringement claim against Arctic: "I asked who the company was and the strength of SQNM's IP. It's Arctic out of Canada and they are so small that it's not worth pursuing a patent infringement." Cox Decl. at Ex. 2. Far from showing that Arctic and Sequenom had "adverse legal interests" – one of the touchstones for declaratory judgment jurisdiction, *see MedImmune*, 549 U.S. at 127 – the tipster's report demonstrates that there is no adversity between the parties.

Third, Arctic's Chairman asserts that he is "aware of statements and representations made during 2010 and 2011 . . . by Sequenom employees and representatives to customers and potential customers of Arctic." Zanke Decl. at ¶ 8; *see also* Opp. Br. at 3, 10. Dr. Zanke does not identify the Sequenom employees and representatives who made these statements and representations, nor does he identify the Arctic customers and potential customers to whom they were made, nor does he state the timing or context when they were made, nor, crucially, does Dr. Zanke say what specifically these third parties told him was said to them. This part of Dr. Zanke's Declaration lacks foundation, is multiple hearsay, and is speculation. The Court should disregard it entirely. Arctic cannot meet its Article III threshold by recycling vague and stale gossip – subject matter jurisdiction exists only when "the record evidence amply supports a real and substantial dispute between these parties." *Micron*, 518 F.3d at 901.

Arctic's "evidence" of pre-filing incidents is all inadmissible. Even if admitted, however, whether separately or together, the evidence gives no credence to Arctic's would-be narrative of a "Sequenom strategy of extra-judicial enforcement." *See* Opp. Br. at 10. There is no merit to Arctic's contention that the three public statements showed Sequenom was about to sue Arctic for infringement.

### C. <u>Sequenom Has Repeatedly Stated That Arctic Has Not Infringed Sequenom's Patents</u>

Both before and since Arctic commenced this action, Sequenom told Arctic in unconditional terms that it does not intend to pursue a patent infringement action against Arctic. While Arctic argues that Sequenom's statements are insufficiently unequivocal, *see* Opp. Br. at 16-17, that surely cannot be so. Thus, Sequenom has told Arctic, in writing:

● "As we have made clear, . . . Sequenom has not and does not contend that ArcticDX infringes any of the five DJ patents identified in your complaint." Cox Decl. at Ex. 7.

● "To reiterate our prior conversations: Sequenom is not aware of any facts that would show that ArcticDX is infringing [Sequenom's] US patents." *Id.* at Ex. 9.

● "Sequenom has never asserted that ArcticDX and/or its products infringe [Sequenom's] patents. . . . Sequenom again affirms that [Arctic's] Macula Risk does not infringe the DJ patents." *Id.* at Ex. 11.

As the Federal Circuit explained in *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995), a party who makes such unconditional statements in court papers "is bound, both now and in the future by its promise" and "cannot free itself of the estoppel." "This estoppel removes from the field any controversy sufficiently actual to confer jurisdiction over this case." *Id*. "[Sequenom's] promise not to sue renders any past or present acts of infringement that [Arctic] may or may not have committed irrelevant to the question whether a justiciable controversy remains. . . . The only proper course for the trial court was to dismiss for lack of jurisdiction, as it did." *Id.* at 1060. In the context of the totality of the circumstances here, Sequenom's statements that it has no patent infringement claim against Arctic have the same binding effect as the statement in *Super Sack*, and the outcome here should be the same.

Arctic argues that, notwithstanding all that Sequenom has said about not having a patent infringement claim against Arctic now, nothing matters because Sequenom has not formally retracted its December 5, 2011 patent rights letters to Arctic and to Arctic's collaborator National Jewish Health. Opp. Br. at 15-16. As discussed above, because the patent rights letters make no litigation threat, and because Arctic's response to its letter resolved any potential infringement issue concerning Arctic's products, no retraction is needed. But, in its statements foreswearing any patent infringement claim against Arctic, Sequenom has actually gone much further than a mere retraction. Sequenom has said, without mincing its words or any equivocation, that Arctic has not infringed Sequenom's patents. In the light of *Super Sack*, Arctic needs no more. Sequenom's unconditional statements divest this Court of subject matter jurisdiction because there is no dispute to be decided. *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) (statement of no intention to sue for patent infringement divests court of jurisdiction).

Arctic also argues that anything short of an executed covenant not to sue or consent judgment is inadequate to defeat its claims. *See* Opp. Br. at 17-18. That misstates the law. The Federal Circuit has reaffirmed the principles set forth in *Super Sack*. *See Dow Jones & Co, Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1346-48 (Fed. Cir. 2010). As *Dow Jones* explained, some exceptional cases, including those cited by Arctic, hold that, in certain situations, such as when the case has proceeded substantially towards a resolution or when the defendant's attempted exculpatory statement is illusory based on its prior misconduct, only an explicit covenant not to sue will suffice. *Id.* However, in most situations, the defendant's timely and unconditional waiver of any pending infringement claim will divest the court of subject matter jurisdiction, as happened in *Dow Jones. Id*. at 1348. That should be the outcome here too, especially given the consistency and unconditionality of Sequenom's disavowals of any claim against Arctic.

The Court has an additional reason to enforce Sequenom's waiver here. As the correspondence between the parties' counsel shows, Sequenom was willing to execute an appropriately worded covenant not to sue. *See* Cox Decl. at Ex. 7 ("I indicated that Sequenom was willing to consider a covenant not to sue."). Instead, Arctic over-reached and demanded that Sequenom execute a complex document running to seven single-spaced pages and giving very broad rights to Arctic, no rights to Sequenom, imposing indemnification obligations on Sequenom for the activities of its licensees, and requiring the joinder of all of Sequenom's licensees in the restrictive terms imposed on Sequenom. *See* Cox Decl. at Ex. 8. Not surprisingly, Sequenom proposed a more appropriate arrangement, which Arctic promptly rejected. *Id*. at ¶ 20.

Arctic cannot demand unreasonable terms for a covenant not to sue and then rely on the inevitable rejection of those terms as a reason to allow this lawsuit. That is particularly so when, as here, Sequenom has made crystal clear its intention not to pursue a patent infringement claim in other binding writings and in unconditional assurances to the Court. *See Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1340 (Fed. Cir. 2008) ("The lack of any evidence that the defendants believe or plan to assert that the plaintiff's product infringes their patents creates a high barrier to proving an imminent risk of injury.").

**D. Sequenom's Involvement In Two Unrelated California Suits Is Irrelevant**

Arctic maintains that it was "alerted as to Sequenom's propensity for litigation" by Sequenom's role *as a defendant* in two pending actions in the Northern District of California. Opp. Br. at 5. The two California actions concern a Sequenom patent unrelated to any of the patents referenced in Arctic's complaint here, deal with a prenatal testing product far removed from Artic's business, and involve entities who do not compete in any way with Arctic. *See* Sequenom's Opening Br. at 5-6. It defies logic that Sequenom can be branded a serial litigator because others have sued it elsewhere over unrelated patents. The two pending California actions are irrelevant here.

Arctic also attacks Sequenom for having asserted counterclaims for infringement of its prenatal testing patents in the California actions. *See* Opp. Br. at 5. But here, unlike what happened in the California actions, Sequenom has not counter-claimed for infringement and has repeatedly told Arctic it will not do so. Arctic should, therefore, be reassured by the contrast between this case and the California actions. In sum, Arctic has failed to meet its burden of showing that the ten declaratory judgment claims in its complaint relate to an actual and substantial controversy between the parties. *See* *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

## III. CONCLUSION

For the reasons set forth in Sequenom's opening brief and above, the Court should grant Sequenom's motion to dismiss.

Dated: May 25, 2012

Respectfully submitted,

By: */s/ Martha Rodenborn*

Martha Rodenborn
martha.rodenborn@kayescholer.com
KAYE SCHOLER LLP
2 Palo Alto Square, Suite 400
3000 El Camino Real
Palo Alto, CA 94306
Tel: (650) 319-4500; Fax (650) 319-4700
*Attorneys for Defendants Sequenom, Inc. and Sequenom Center For Molecular Medicine, LLC*

Michael C. Smith
michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS SMITH LLP
113 East Austin St., P.O. Box 1556
Marshall, TX 75671
Tel: (903) 938-8900; Fax: (972) 767-4620

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2012, a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service, Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail.

*/s/ Martha Rodenborn*
Martha Rodenborn