**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ARCTICDX, INC., ARCTICAX, INC., and ARCTICAX US LTD., </br></br>Plaintiffs,</br></br>v.</br></br>SEQUENOM, INC. and SEQUENOM CENTER FOR MOLECULAR MEDICINE, LLC,</br></br>Defendants. | )</br>)</br>)</br>)  NO. 2:12-cv-81-JRG-RSP</br>)</br>)  Jury Trial Demanded</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>)</br>) |

**DEFENDANTS SEQUENOM, INC.'S AND SEQUENOM CENTER FOR
MOLECULAR MEDICINE, LLC'S REPLY IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................2

    A. The Three Key Private Interest Factors – Location Of Documents And Convenience Of Parties And Of Third Party Witnesses – All Favor Transfer.......................................................................................................................2

        1. No Relevant Documents Are In The Eastern District Of Texas While All The Pertinent Documents Are In Southern California..........................................................................................................2

        2. Cost Of Attendance For Witnesses Favors Transfer. ........................3

        3. Avoidance Of Other Practical Problems Factor Is Neutral. ...............6

        4. Availability Of Compulsory Process Factor Favors San Diego..........6

    B. The Public Interest Factors Favor Transfer. ...................................................6

        1. Administrative Difficulties Flowing From Court Congestion Factor Do Not Favor Keeping The Case In This Court.....................6

        2. Local Interest Factor Strongly Favors Transfer. ...............................6

        3. Courts' Familiarity With Law And Avoiding Conflicts Of Laws Factors Are Both Neutral. .........................................................7

    C. Plaintiff's Choice Of Forum Is Not Entitled To Any Deference ...................8

        1. Only Arctic's Choice Of Its Home Forum Would Be Entitled To Deference. ......................................................................................8

        2. Neither Party Has A Significant Commercial Presence In The Eastern District Of Texas. .........................................................9

III. CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Continental Airlines v. American Airlines*,
    805 F. Supp. 1392 (S.D. Tex. 1992) ........................................................................5

*In re Genentech, Inc.*,
    566 F.3d 1388 (Fed. Cir. 2009) ............................................................................4, 6

*In re Hoffman-LaRoche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009) ................................................................................7

*In re Link-A-Media Device Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ................................................................................8

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ................................................................................5

*In re Zimmer*,
    609 F.3d 1378 (Fed. Cir. 2010) ................................................................................8

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
    2012 WL 194382 (E.D. Tex. Jan 23, 2012) ................................................ 2, 3, 7, 8, 9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ..................................................................................................8

*RMail Ltd. v. DocuSign, Inc.*,
    2012 WL 1416299 (E.D. Tex. Apr. 24, 2012) ...................................................3, 8, 9

*Software Rights Archive, LLC v. Google, Inc.*,
    2010 WL 2950351 (E.D. Tex. July 22, 2010) ..........................................................6

*Trademaven Clearing LLC v. Hood*,
    2012 WL 1108119 (E.D. Tex. Mar. 31, 2012) ......................................................2, 3

*VoxPath RS, LLC v. LG Electronics U.S.A., Inc.*,
    2012 WL 194370 (Jan. 23, 2012) .........................................................................3, 6

**Statutes**

28 U.S.C. § 1404 ................................................................................................................2

I.  **INTRODUCTION**

This case belongs, if anywhere, in the Southern District of California. Since the Federal Circuit clarified the law on venue transfer in *In re Genentech* and *In re Nintendo,* no court in the Eastern District of Texas has held that this District is a "clearly more convenient" venue based on the presence of (at most) a single potential customer witness in this District, when both parties' offices and employees are located far from the state and numerous important witnesses and sources of proof are located in the proposed transferee venue. Indeed, the lesson from the Federal Circuit cases is that this District cannot be the default forum of choice for out-of-state (or in this case, out-of-country) patent litigation plaintiffs with no local connection. This action provides no reason to depart from the Federal Circuit's directions as recently applied by this Court.

As the parties' papers have established, the Eastern District of Texas is *not* a convenient forum for this action because:

- Arctic has no office and no employees in the Eastern District of Texas;
- Sequenom has no office in the Eastern District of Texas, and none of its three home-based employees who live here is a potential witness in the case;
- Neither parties' documentary evidence is located in the Eastern District of Texas;
- No pertinent Sequenom witness is located in the Eastern District of Texas;
- No Arctic party witness is located in the Eastern District of Texas;
- No non-party witness – other than, possibly, a sole customer of Arctic – is located here; and
- No inventor witness can reach the Eastern District of Texas without a full day's travel.

In contrast, the parties' papers have shown that the Southern District of California *is* clearly more convenient than the Eastern District of Texas:

- All of Sequenom's relevant records are located in the Southern District of California;
- All of Sequenom's employee witnesses are located in the Southern District of California;
- One inventor witness resides in Los Angeles within the subpoena power of the Southern District of California; and
- Another inventor witness is within a few hours travel to the Southern District of California.

Because it cannot show that the Eastern District of Texas is a convenient venue, Arctic instead asks the Court to defer to Arctic's selection of this forum as its preferred location to litigate this dispute. But a plaintiff's choice of forum is not entitled to deference if, like Arctic, it has no presence in this

District.  A Canadian company with a Florida facility and no local ties is entitled to no deference for choosing to litigate in this District.

When compared to the Eastern District of Texas, the Southern District of California is clearly the more convenient forum to resolve this dispute.  The convenience of the parties and witnesses and the interests of justice deem that the Court should grant Sequenom's motion and transfer this action to the Southern District of California under 28 U.S.C. § 1404.

## II.   ARGUMENT

### A.   The Three Key Private Interest Factors – Location Of Documents And Convenience Of Parties And Of Third Party Witnesses – All Favor Transfer

#### 1.   No Relevant Documents Are In The Eastern District Of Texas While All The Pertinent Documents Are In Southern California.

Arctic concedes that "courts in this District frequently consider the physical location of the evidence." Opp. at 8.  In this case, all of the proof of Sequenom's alleged infringement is located at Sequenom's San Diego headquarters, *see* Peterson Decl. at ¶13, while Arctic's documents are held in Canada and Florida.  None of the sources of physical proof is located in the Eastern District of Texas.  This first private interest factor strongly favors the Southern District of California.

Yet, Arctic characterizes this factor as "neutral," rationalizing that the California-based documentary evidence might be downloaded electronically and then transported across the country.  Opp. at 8-9.  Were that the standard, then modern technology would long ago have rendered this venue transfer factor superfluous.  However, the Federal Circuit and this Court have roundly rejected Arctic's argument.  *See Network Protection Sciences, LLC v. Juniper Networks, Inc.*, 2012 WL 194382 at *3 (E.D. Tex. Jan 23, 2012) ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor.").

Arctic cites *Trademaven Clearing LLC v. Hood,* 2012 WL 1108119 at *2 (E.D. Tex. Mar. 31, 2012), as authority for the proposition that "where the physical evidence is documentary . . . the relative ease of access to sources of proof is deemed a neutral factor." Opp. at 2.  *Trademaven* is not on point.  *Trademaven* involved an online commodities broker and its customer.  The *only* interaction between the parties in that case occurred *online*, and thus "all the sources of proof will stem from online

transactions." *Id*. at *2. This case does not involve an online business. Extensive documentary evidence exists in San Diego, including documents reflecting the research and development of the accused infringing product and Sequenom's financial records.

Contrary to Arctic's characterization, the *Trademaven* court acknowledged that even in this digital age, the factor of relative ease of access to sources of proof "is not superfluous." *Id*. As this Court recently noted, "an alleged infringer's proof is particularly important to venue transfer analysis in patent infringement cases." *RMail Ltd. v. DocuSign, Inc.*, 2012 WL 1416299, at *4 (E.D. Tex. Apr. 24, 2012). In patent infringement cases such as this one, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Network Protection,* 2012 WL 194382 at *6. In this case, those documents are all in the Southern District of California.

> **2. Cost Of Attendance For Witnesses Favors Transfer.**

Southern California is more convenient for the witnesses as a whole than the Eastern District of Texas. Arctic's assertion to the contrary, *see* Opp. at 11, does not square with the facts. As this Court has observed, even "[w]here a potential witness in Texas will be inconvenienced if the defendant's transfer motion is granted, if there are more witnesses located in the transferee district who will be inconvenienced if the case is *not* transferred, the convenience of the witnesses weighs in favor of transfer," especially when, as here, "party and non-party witnesses located across the county and the world will experience no more inconvenience by traveling to [the transferee venue] than Marshall." *VoxPath RS, LLC v. LG Electronics U.S.A., Inc.,* 2012 WL 194370 at *5 (Jan. 23, 2012). This case matches the *VoxPath* scenario: no Arctic employee witness is in Texas; all of the Sequenom witnesses live and work in the Southern District of California; at least one inventor witness is in California but none are in Texas; San Diego and Marshall are equally inconvenient for most of the other inventor witnesses; while, at best (taking Arctic's dubious reasoning at face value), just one potential Arctic witness lives locally in Crockett.

Arctic attempts to put its thumb on the balance of convenience by parsing numerous flight and train timetables to argue that, because five of the nine inventor witnesses might have to travel up to two

hours less to get to the Eastern District of Texas, it is "more convenient." *See* Opp. at 10-11. The Federal Circuit in *Genentech* rejected this line of reasoning, explaining that small differences in long journeys of over 100 miles to the courthouse should not be given any significant weight: "[T]here are a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home to testify in the Eastern District of Texas. . . . [T]he district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech, Inc*., 566 F.3d 1388, 1344 (Fed. Cir. 2009).

In any event, the facts contradict Arctic's argument.[1]  Arctic's travel chart shows that two of the inventor witnesses could reach the Southern District of California easily – a two-hour drive for the inventor from Los Angeles and four hours for the inventor from Utah. *See* Opp. at 11.  None of the potential inventor witnesses could reach the Eastern District of Texas in less than six and a half hours. *Id*.  One North American inventor would face a trip of over ten hours to testify in the Eastern District of Texas, while the Southern District of California would be no more than an eight and a half hours journey for any inventor. *Id*.

The balance tips sharply in favor of the Southern District of California when the party witnesses are considered. None of Arctic's party witnesses live or work in Texas, and its identified party witnesses are in Canada and Florida. *See* Zanke Decl. at ¶ 10.  By Arctic's own calculations, all of its party witnesses will have to travel at least a full day to either venue. *See* Mukerjee Decl. at ¶¶ 8, 10.  In contrast, all of Sequenom's likely employee witnesses are in the Southern District of California. *See* Peterson Decl. at ¶ 9.

---

[1] In its opening brief, Sequenom noted, but did not directly address, transfer issues relating to most of the inventor witnesses because five of the six patents in the Complaint are the subject of Arctic's declaratory judgment claims which Sequenom has concurrently moved to dismiss for lack of subject matter jurisdiction. *See* Opening Br. at 2, n.1. Sequenom explained that consideration of these witnesses (one of whom is in Los Angeles; none lives in this District) weighs in favor of transfer. *Id.* at 9, n.4; 10, n.5. Because Arctic discussed these potential witnesses prominently in its opposition brief, *see, e.g.,* Opp. at 4-5, Sequenom has also treated these inventors as "likely" witnesses in this reply brief. If the Court dismisses the declaratory judgment claims, none of those witnesses would be relevant for this transfer motion.

Arctic tries to muddy the waters by elevating a Sequenom employee who lives in Texas into a damages witness at trial, despite Sequenom's explicit assurance that she has no relevant knowledge of the damages numbers.  *See* Peterson Decl. at ¶ 11.  All of the data on sales of the accused infringing product, like all of Sequenom's other evidence in this case, is held in San Diego, and Sequenom's financial staff in San Diego can testify most competently on damages issues.  *Id.* at ¶ 9.

Arctic also tries to manufacture a connection to this District by speculating that it may call as a witness one of its customer physicians who happens to live in Crockett, Texas.  Opp. at 11.  Arctic neither offers a declaration from this person, nor specifies any testimony that is uniquely in his knowledge.  This is a makeweight argument, and it does little to help Arctic's position.

Arctic states he will testify generally about prior art and Arctic's product.  Opp. at 5.  To the extent that this doctor will testify as an expert witness, his convenience is not pertinent.  See *Continental Airlines v. American Airlines*, 805 F. Supp. 1392, 1397 n.12 (S.D. Tex. 1992) ("Several courts have held that the location of expert witnesses is entitled to little if any weight on a motion to transfer venue.").  To the extent the doctor testifies from his practice experience about the development of the genetic testing market for AMD, that testimony can be provided by almost any experienced ophthalmologist.  Arctic's own promotional materials trumpet the virtues of  two groups of more than twenty ophthalmologists in San Diego who are knowledgeable about its test.  *See* Rodenborn Decl. at ¶¶ 37-38.  No doubt, one of these doctors, or another from among the thousands practicing in California, could provide this foundational testimony at least as effectively as the Crockett doctor.

In sum, a substantial proportion of the party and inventor witnesses reside in Southern California, another substantial proportion reside where travel to Marshall or San Diego is equally inconvenient, and no one resides in the Eastern District of Texas.  Based on these facts, the Court should transfer the venue of this action to the Southern District of California.  *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ( in case "featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

### 3. Avoidance Of Other Practical Problems Factor Is Neutral.

Arctic argues that this case is so advanced that a transfer now would cause practical problems in managing the case. Opp. at 13. Judicial economy weighs against transfer only where the court is already familiar with the case's facts or the moving party delayed unreasonably before filing its transfer motion. *See Software Rights Archive, LLC v. Google, Inc.*, 2010 WL 2950351 at *3-4 (E.D. Tex. July 22, 2010). Arctic filed its complaint barely three months ago; there has been no discovery. Transfer of this case now would create no practical problems for the new venue.

### 4. Availability Of Compulsory Process Factor Favors San Diego.

While Arctic argues that this fourth private interest factor is neutral, *see* Opp. at 9, Arctic has overlooked that one non-party inventor witness lives in Los Angeles and could be subpoenaed to appear in San Diego, but not in this Court. This factor also favors a transfer to the Southern District of California.

## B. The Public Interest Factors Favor Transfer.

### 1. Administrative Difficulties Flowing From Court Congestion Factor Do Not Favor Keeping The Case In This Court.

Arctic notes a longer average time to trial historically for patent cases in the Southern District of California than in this District, and argues that this constitutes "court congestion." *See* Opp. at 15. As the Federal Circuit has explained, comparative speed to trial merits little consideration because it is "the most speculative" factor. *Genentech,* 566 F.3d at 1347. In *VoxPath*, this Court considered evidence that transfer might increase the time to trial, and held that, "[g]iven the speculative nature of this factor . . . the court finds it to be neutral." 2012 WL 194370 at *7. The Court should similarly find this factor neutral here.

### 2. Local Interest Factor Strongly Favors Transfer.

Based on nothing more than a relatively better sales record for its product in Texas, and the fact that Sequenom also has customers in Texas (as it does in almost every other state), Arctic asserts its claims of nationwide patent infringement have a stronger local interest here than in the Southern District of California. Opp. at 14. Arctic cites no legal authority for this proposition. Indeed, the law is to the contrary.

This Court has recognized that a few local sales are irrelevant to a venue transfer analysis when neither party has any other substantial local interests. *See Network Protection,* 2012 WL 194382, at *7 ("Interests that could apply to virtually any judicial district . . . such as the nationwide sale of . . . products, are disregarded in favor of particularized local interests."). The Southern District of California is the location of Sequenom's headquarters, the vast majority of its operations, all of its records, and almost all of its employees, *see* Peterson Decl. at ¶ 9. These facts, not scattered sales, are the type of local interests courts have recognized as weighing heavily in favor of transfer. *See In re Hoffman-LaRoche, Inc.,* 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that [proposed transferee] district and who presumably conduct business in that community.").

Arctic further argues that the Southern District of California has less of a local interest in this case because Arctic has not managed to sell any of its products anywhere in the state. *See* Opp. at 14. However, with two extensive networks of ophthalmologists promoting its test in San Diego alone, and having just sponsored a promotional event in Los Angeles, Arctic's dearth of California sales is apparently not from lack of trying. *See* Rodenborn Decl. at ¶¶ 37-39.

A community's interest in resolving disputes relating to the "work and reputation" of individuals who "conduct business in that community" is one of the classic local interests long recognized by the courts. *Hoffman-LaRoche,* 587 F.3d at 1336. Sequenom has that interest in San Diego. This factor tips sharply in favor of the Southern District of California.

### 3. Courts' Familiarity With Law And Avoiding Conflicts Of Laws Factors Are Both Neutral.

The parties agree that both of these factors are neutral.

*************************

In sum, three of the four private interest factors and one of the public interest factors tips favor a San Diego forum over a Marshall forum,. The other private and public interest factors are neutral. The Court should conclude that the Southern District of California is clearly a more convenient forum than

the Eastern District of Texas. Thus, the Court should transfer venue of this action to the Southern District of California.

**C.     Plaintiff's Choice Of Forum Is Not Entitled To Any Deference**

   **1.     Arctic's Choice Of Forum Is Not Entitled To Deference.**

Arctic argues that the Court should give substantial deference to its selection of the Eastern District of Texas as its venue of choice to prosecute its infringement claims against Sequenom. Opp. at 1. Arctic's choice of this venue is entitled to *no* deference, much less substantial deference.

The Supreme Court and the Federal Circuit give substantial deference to a plaintiff's choice of venue only if the plaintiff has picked its *own home forum*, and "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *In re Link-A-Media Device Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 (1981) ("when a plaintiff is foreign, the presumption of favor for its choice of forum is much less reasonable"). In cases such as this one, where a plaintiff's connection to the forum is ephemeral, the choice of forum is entitled to no deference at all. This Court recently held that a plaintiff has only an "ephemeral" presence in this District when (1) it employs no one in the District, or (2) none of its principals live here, and (3) it conducts no research or development activities locally. *RMail*, 2012 WL 1416299 at *2. An ephemeral plaintiff's choice of this forum is entitled to no deference. *Id*. *See also In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (plaintiff's physical presence in a forum should weigh against transfer only if the presence is not "recent, ephemeral, and an artifact of litigation."). Arctic employs no one in this District, none of its principals lives in the United States, and it conducts no research or development activities here. Its choice of this forum is due zero deference.

Arctic claims the right to "substantial deference" for its forum choice because it "was neither random nor arbitrary." Opp. at 1. That is not good enough. *See Network Protection*, 2012 WL 194382 at *4 ("The Federal Circuit has made clear that recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis."). Arctic is based in Toronto, and the "closest" connection Arctic has to this District are two sales representatives

who visit from elsewhere, and one customer. Opp. at 3, 4, 5. Arctic could have picked a U.S. forum to which it has some tangible connection, but chose not do so. The Court should give no deference to Arctic's selection of this District.

> 2. **Neither Party Has A Significant Commercial Presence In The Eastern District Of Texas.**

Arctic compares this case to the situation this Court considered in *RMail* because both parties have to travel here from widely dispersed locations. Opp. at 12. The analogy is off-base. Unlike Arctic, in *RMail,* the plaintiff had an office in this District, and, also employed a senior executive who worked out of that local office. *RMail*, 2012 WL 1416299, at *1. In *RMail*, the plaintiff also identified "several" customers and two prior-art witnesses who resided in this District. *Id.* Arctic has identified a single customer in Texas. Further, this Court's decision in *RMail* turned in part on the fact that travel from where potential witnesses resided to the Eastern District of Texas was "equally as convenient" or "more convenient" as travel to the proposed transferee venue. *Id.* at *4. That is not the case here – Sequenom's witnesses are almost all in San Diego, a few minutes from the courthouse in the proposed transferee venue. Arctic's own chart demonstrates that travel to the San Diego would be significantly more convenient for the two inventor witnesses living in Los Angeles and Utah, while travel to the Marshall, Texas would take a full day for all nine of the inventor witnesses. *See* Opp. at 11.

This case is more like this Court's decision in *Network Protection*. There, in contrast to Arctic's total absence from the District, the plaintiff had recently opened a Longview office, and had a local employee and pertinent documents in Longview. However, the defendants' records and witnesses were all in or close to the proposed transferee district. *See Network Protection,* 2012 WL 194382, at **3-5. Based on these facts, this Court found plaintiff's connection to the Eastern District was "ephemeral" and a venue transfer was appropriate: "The number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in . . . California. Accordingly, the court concludes that this factor weighs in favor of transfer." *Id.* at *6. The same result should apply here.

### III. CONCLUSION

For all the reasons set forth above and in Sequenom's opening brief, the Court should order this action transferred from the Eastern District of Texas to the Southern District of California.

Dated: May 29, 2012

Michael C. Smith
michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS SMITH LLP
113 East Austin St., P.O. Box 1556
Marshall, TX 75671
Tel: (903) 938-8900; Fax: (972) 767-4620

Respectfully submitted,

By: */s/ Martha Rodenborn*
Martha Rodenborn
martha.rodenborn@kayescholer.com
KAYE SCHOLER LLP
2 Palo Alto Square, Suite 400
3000 El Camino Real
Palo Alto, CA 94306
Tel: (650) 319-4500; Fax (650) 319-4700
*Attorneys for Defendants Sequenom, Inc. and Sequenom Center For Molecular Medicine, LLC*

## CERTIFICATE OF SERVICE

  I hereby certify that on May 29, 2012, a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service, Local Rule CV-5(a)(3)(A).

  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail.

              */s/ Martha Rodenborn*
              Martha Rodenborn